UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CITY OF LAS VEGAS,<br><br>Plaintiff(s),<br><br>v.<br><br>PURDUE PHARMA, L.P., et al.,<br><br>Defendant(s). | Case No. 2:19-CV-2128 JCM (DJA)<br><br>ORDER |

Presently before the court is plaintiff City of Las Vegas's ("city") motion to remand to state court. (ECF No. 6). Defendants CVS Health Corporation, CVS Pharmacy, Inc., CVS Indiana, L.L.C., CVS Rx Services, Inc. and CVS Tennessee Distribution, L.L.C. (collectively, "defendants") filed a response (ECF No. 21), to which the city replied (ECF No. 24).

Also before the court is defendants' motion to stay case pending likely transfer to multidistrict litigation. (ECF No. 20). The city filed a response (ECF No. 23), to which defendants replied (ECF No. 25).

**I.     Background**

The instant action arises from the national and widely publicized opioid crisis. The city sued a variety of entities and individuals responsible for manufacturing, marketing, and selling prescription opioids, including Oxycontin, Vicodin, and Percocet and their generic counterparts. (ECF No. 1-2). The city groups the defendants into drug manufacturers (including the individual "Sackler defendants"), wholesale distributors, detailers, pharmacies, and health care providers. *Id.* at 9–22.

The city filed suit in the Eighth Judicial District Court, alleging public nuisance under Nevada and common law, negligent misrepresentation, and unjust enrichment against all

defendants. *Id.* at 46–57, 60–61. It also alleges negligence against the distributors, pharmacies, and health care providers. *Id.* at 58–60. Finally, it brings a claim against certain defendants for alleged violations of Nevada's Racketeering Act. *Id.* at 61−88. Defendants timely removed this action on December 11, 2019. (ECF No. 1).

This case is unextraordinary. In fact, more than 2,600 similar cases have been filed by government entities throughout the country. Many of those cases have been transferred to the Northern District of Ohio as part of the multidistrict litigation *In re National Prescription Opiate Litig.*, MDL No. 2804, ("Opiate MDL").[1]

On December 23, 2019, the Judicial Panel on Multidistrict Litigation ("JPML") entered a conditional transfer order ("CTO"), finding that this action appears to "involve questions of fact that are common to the actions previously transferred to the Northern District of Ohio and assigned to Judge Polster." CTO-127, JPML Dkt. No. 6566. Defendants moved to stay the case until the JPML renders a final decision on whether to transfer this action to the Opiate MDL. (ECF No. 20).

## II. Legal Standard

### A. Remand

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

---

[1] The Judicial Panel on Multidistrict Litigation created the Opiate MDL on December 5, 2017 to handle cases in which "cities, counties and states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017).

Because the court's jurisdiction is limited by the Constitution and 28 U.S.C. §§ 1331, 1332, "[t]he threshold requirement for removal under 28 U.S.C. § 1441 is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court." *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 861 (9th Cir. 2003) (quoting *Toumajian v. Frailey,* 135 F.3d 648, 653 (9th Cir. 1998)). Thus, "it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c). On a motion to remand, the removing defendant must overcome the "strong presumption against removal jurisdiction" and establish that removal is proper. *Hunter*, 582 F.3d at 1042 (quoting *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992) (per curiam)). Due to this strong presumption against removal jurisdiction, the court resolves all ambiguity in favor of remand to state court. *Id.*

*B. Stay*

Courts have broad discretion in managing their dockets. *See, e.g.*, *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936) (courts have the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants"). In exercising that discretion, courts are guided by the goals of securing the just, speedy, and inexpensive resolution of actions. *See* Fed. R. Civ. P. 1.

**III. Discussion**

The first—and virtually dispositive—issue before the court is which motion it should consider first: the motion to remand or the motion to stay.[2] Other federal courts presiding over state-law opioid cases have grappled with these dueling motions to remand or stay.

---

[2] And, to be sure, this court maintains jurisdiction over both motions, the JPML's conditional transfer order notwithstanding. The Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation expressly provide that a conditional transfer order "does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." R. P. JPML 2.1(d).

- 3 -

Some courts consider and grant the motion to remand without addressing the motion to stay. *See, e.g., Dinwiddie Cty., Virginia v. Purdue Pharma, L.P.*, No. 3:19-CV-242, 2019 WL 2518130 (E.D. Va. June 18, 2019); *City of Reno v. Purdue Pharma, L.P.*, No. 3:18-cv-00454-MMD-WGC, 2018 WL 5730158 (D. Nev. Nov. 2, 2018); *Mayor and City Council of Baltimore v. Purdue Pharma, L.P*, No. 18-800, 2018 WL 1963816, at *3 (D. Md. April 25, 2018) (collecting cases); *Cty. of Falls v. Purdue Pharma, LP,* No. 6:18-CV-47-RP-JCM, 2018 WL 1518849, at *1 (W.D. Tex. Mar. 28, 2018); *Cty. of Delta v. Purdue Pharma, L.P.*, No. 4:18-CV-095, 2018 WL 1440485 (E.D. Tex. Mar. 22, 2018).

Other courts do just the opposite, and rule on the motion to stay without reaching the merits of the motion to remand. *See, e.g., Bd. of Cty. Commissioners of Seminole Cty., Oklahoma v. Purdue Pharma L.P.*, No. CIV-18-372-JWL, 2019 WL 1474397, at *2 (E.D. Okla. Apr. 3, 2019); *Bd. of Cty. Commissioners of Pawnee Cty., Oklahoma v. Purdue Pharma L.P.*, No. 18-CV-459-GKF-FHM, 2018 WL 5973752, at *2 (N.D. Okla. Nov. 14, 2018); *Bd. of Cty. Commissioners of Delaware Cty., Oklahoma v. Purdue Pharma L.P.*, No. 18-CV-0460-CVE-JFJ, 2018 WL 5307623 (N.D. Okla. Oct. 26, 2018); *St. Bernard Parish Gov't v. Purdue Pharma LP, et al.*, 2:18-cv-02717-NJB-DEK, 2018 U.S. Dist. LEXIS 53054 (E.D. La. Mar. 29, 2018).

Very few courts have addressed both motions. In *Dunaway v. Purdue Pharma L.P.*, however, Judge Aleta Trauger, from the Middle District of Tennessee, held as follows:

> [I]f this case is not properly in the federal courts (either because we lack jurisdiction or because the removal was defective), then the case *should* be on a different track. Different litigation under different laws in different states is inherent to the federal system embraced by the limited jurisdiction of the federal courts.

*Dunaway v. Purdue Pharma L.P.*, 391 F. Supp. 3d 802, 809 (M.D. Tenn. 2019) (emphasis in original). Judge Trauger's analysis in *Dunaway* is persuasive. When considering a pending motion to stay, Judge Trauger explained as follows:

> The interests of judicial economy are furthered by putting a case, as expeditiously as possible, in a court that has the jurisdiction to resolve it. It would not be a good use of judicial resources for the JPML to devote its time and attention to a transfer from one federal court to another, if the ultimate legal reality is that neither court has or can have jurisdiction. Nor would it be a good use of the

> transferee court's resources for that court to have to deal with the intake and processing of a case only to realize, later, that the case should be in state court. It would be a waste of judicial resources for a case to proceed in the federal courts if, ultimately, a federal court is not the appropriate court to consider plaintiffs' claims. This court can imagine few greater wastes of a court's resources than consideration of a case that the court has no jurisdiction to decide.

*Id.* at 809 (internal citation, quotation marks, and alteration omitted).

This court agrees with that analysis. Thus, the court finds it appropriate in this case to determine whether the court has jurisdiction before entertaining the motion to stay.

Defendants bear the burden of proving that the city's complaint contains a cause of action within this court's jurisdiction. "In scrutinizing a complaint in search of a federal question, a court applies the well-pleaded complaint rule." *Ansley*, 340 F.3d at 861 (citing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987)). "For removal to be appropriate under the well-pleaded complaint rule, a federal question must appear on the face of a properly pleaded complaint." *Id.* (citing *Rivet v. Regions Bank of La.,* 522 U.S. 470, 475 (1998)). Federal question jurisdiction is present when a state-law claim "necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Potter v. Hughes*, 546 F.3d 1051, 1064 (9th Cir. 2008) (quoting *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation,* 524 F.3d 1090, 1100 (9th Cir. 2008)) (alteration and internal quotation marks omitted).

Defendants removed this case on the basis of federal question jurisdiction. (ECF No. 1). Defendants contends that the complaint raises issues under the Controlled Substances Act ("CSA") such that the city's state-law claims are subject to federal jurisdiction. *Id.* Defendants also argue that this case is otherwise removable pursuant to the Class Action Fairness Act ("CAFA"). *Id.* The court will address each in turn.

*A. Removal pursuant to CSA*

Defendants argue that "[a]ll the alleged causes of action against the [d]istributor [d]efendants arise from, and are dependent upon, purported violations of duties arising from the

federal Controlled Substances Act ('CSA')." (ECF No. 1 at 4). The city contends that reference to the CSA merely "help[s] elucidate the standard of care that [d]efendants must meet under state law." (ECF No. 6 at 11). The city also points out that its complaint alleges several common- and state-law duties that defendants violated, including that they:

> knew or should have known that opioids were unreasonably dangerous and could cause addiction; knew or should have known that their marketing of opioid use would create a public nuisance; and as such they owe a nondelegable duty to the City of North Las Vegas to conform their behavior to the legal standard of reasonable conduct under the circumstances.

*Id.*

In order for a state law claim to raise a federal question, the federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

Even if a complaint relies only on federal law to establish a defendant's duty and standard of care—as elements of a common law negligence claim—it does not necessarily create a federal question. As the Supreme Court held in *Merrell Dow Pharm. Inc. v. Thompson*:

> A complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 817 (1986). The Supreme Court reasoned that Congress's choice to provide "no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action **is insufficiently 'substantial' to confer federal-question jurisdiction**." *Id.* at 814 (emphasis added).

To be sure, defendants can argue that they owed no duty to the city. But such an argument does not create a federal question. Judge Trauger considered a similar argument under Tennessee law:

> McKesson argues that the state-law grounds for finding liability under the TDDLA are insufficient because none of the cited provisions specifically includes a duty to report and refuse to fill "suspicious orders." **The precise boundaries of the cited Tennessee law, however, present an issue of merits, not jurisdiction.** *See Uintah Cty., Utah v. Purdue Pharma, L.P.*, No. 2:18-CV-00585-RJS, 2018 WL 3747847, at *6 (D. Utah Aug. 7, 2018) (rejecting same argument, regarding Utah law, because the validity of the independent state sources of the duties alleged were merits issues).

*Dunaway*, 391 F. Supp. 3d at 813 (emphasis added). Judge Du considered the same argument and remanded a nearly-identical case brought against defendants by the city of Reno. *City of Reno v. Purdue Pharma, L.P.*, No. 3:18-cv-00454-MMD-WGC, 2018 WL 5730158 (D. Nev. Nov. 2, 2018). Judge Du held "that a federal issue is not necessarily raised because Reno can prevail on each of its claims by reference to the broad duty imposed by NAC § 453.400 . . . ." *Id.* at *2. Alternatively, Judge Du noted that "Reno could succeed on this claim by showing that Defendants breached a general duty of reasonable care as opposed to the specific duties imposed by either the CSA or NAC § 453.400." *Id.*

First, the parties do not argue that the CSA provides a private, federal cause of action for violations thereof. (*See* ECF Nos. 1, 6, 21). Thus, invoking violations of the CSA as an element of a state-law claim—e.g., duty and standard of care in a negligence action—does not invoke federal question jurisdiction because it is "insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 814.

Even to the extent that reference to the CSA may raise a possible federal question, it would not be "necessarily raised." The city in this case—like Reno did in its suit against defendants—alleges that defendants breached duties imposed by state statutes and regulations, specifically NAC § 453.400. The city may also successfully argue that defendants breached the general duty of reasonable care. Thus, defendants' arguments go to the merits of the city's claims, not to this court's jurisdiction.

Accordingly, the CSA is not proper grounds for the removal of this action. Unless removal was appropriate pursuant to CAFA, remand is warranted.

. . .

*B. Removal pursuant to CAFA*

Defendants contend that this case "is also removable under the Class Action Fairness Act ('CAFA') . . . ." (ECF No. 1 at 15). Congress passed CAFA—and intended it to be broadly interpreted—"specifically to permit a defendant to remove certain class or mass actions into federal court." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "[T]he term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar [s]tate statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332.

When the aggregated amount in controversy in a class action exceeds $5 million, there is "minimum diversity (any member of the class is a citizen of a state different from any defendant)," and when the class size is over 100, subject matter jurisdiction exists under CAFA. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

Unlike removal of ordinary diversity cases, "no antiremoval presumption attends cases invoking CAFA." *Id.* (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014)). Nonetheless, a defendant removing a case under CAFA "has the burden to put forward evidence showing that the amount in controversy exceeds $5 million, to satisfy other requirements of CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." *Ibarra*, 775 F.3d at 1197.

Defendants summarily argue that the city's "claims and damages cannot be determined without a class of injured residents." (ECF No. 21 at 15). The city argues that defendants "ha[ve] failed to satisfy CAFA's most fundamental requirement—i.e., showing that this case falls within CAFA's definition of a class action and that the [city] is not the real party in interest." (ECF No. 6 at 17). The city represents that it "is not trying to collect personal damages on behalf of Las Vegas residents for the residents' injuries . . . ." *Id.* at 18. Instead, the city "is a single, municipal plaintiff seeking damages it incurred as a result of [d]efendants' misconduct, and the [c]ity has alleged no claims under Rule 23." *Id.* at 3.

James C. Mahan
U.S. District Judge

Because the city is pursuing—and will only be able to recover[3]—its own damages, this case is not a class action and does not fall within the purview of CAFA.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the city's motion to remand (ECF No. 6) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants' motion to stay case pending likely transfer to multidistrict litigation (ECF No. 20) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the matter of *City of Las Vegas v. Purdue Pharma, L.P. et al.*, case number 2:19-cv-02128-JCM-DJA, be, and the same hereby is, REMANDED.

DATED January 15, 2020.

　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[3] "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citing *Rissetto v. Plumbers & Steamers Local 343*, 94 F.3d 597, 600–601 (9th Cir. 1996); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). Thus, if defendants are concerned that the city will seek to recover damages on behalf of its citizens, the doctrine of judicial estoppel prevents the city from taking two inconsistent positions—one for jurisdictional purposes, the other for damages—to gain an unfair advantage in this litigation.